**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**CASE NO. 22-CR-20114-KMW**

UNITED STATES OF AMERICA

v.

CARLOS RAMON POLIT FAGGIONI,

    Defendant.
_____/

**THE UNITED STATES OF AMERICA'S SENTENCING MEMORANDUM**

    The United States of America submits this memorandum for the Court's consideration in determining an appropriate sentence for the defendant, Carlos Ramon Polit Faggioni. A jury convicted the defendant of a nearly decade-long conspiracy to launder millions of dollars in bribes he solicited and received as the Comptroller General in Ecuador. Despite his sophisticated education and Ecuadorian law degree, and despite the fact that it was the defendant's job to prevent corruption and protect the public fisc of Ecuador, the defendant abused his powerful political position to obtain over $16 million in bribes and launder those bribes into South Florida with the help of his son and others.

    Based on the relevant conduct at issue, the U.S. Sentencing Commission Guidelines ("Guidelines") calculation for the defendant, as set out below, and the sentencing factors articulated in 18 U.S.C. § 3553(a), the government submits that a Guidelines sentence of 235 months' incarceration is appropriate. There are no factors warranting a below-Guidelines sentence for the defendant, who used his professional and social status to extract millions of dollars in bribes. Accordingly, the government recommends that the Court impose: (1) a sentence of 235 months' imprisonment, based upon a loss amount of more than $9.5 million under the

Sentencing Guidelines; (2) a three-year period of supervised release including a prohibition from serving in an government position, and (3) an order of forfeiture in the form of a money judgment in an amount to be determined by the Court, but at least $16,500,000.

I. SECTION 3553(A) FACTORS

While the Guidelines are purely advisory, the Court "must consult those Guidelines" and the factors set forth in 18 U.S.C. § 3553(a) when determining the appropriate sentence. United States v. Booker, 543 U.S. 220, 264 (2005). The need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment and adequate deterrence, and protect the public, counsel for imposing Guidelines sentences. See 18 U.S.C. § 3553(a)(2). As set forth below, the Section 3553(a) factors weigh in favor of a sentence within the Guidelines.

   A.   Nature and Circumstances of the Offense and the History and Characteristics of the Defendant

The Court should impose a significant sentence given the nature and circumstances of the offense. The defendant served as comptroller general of Ecuador from 2007 to 2017. In this position, defendant oversaw over 2,000 employees and had responsibility to monitor the use of Ecuador's government resources. The duties of the Comptroller and his office included protecting public funds against fraud and rooting out corruption. The comptroller general had the power to audit any government entity or contract, to impose fines, and to recommend persons for criminal prosecution. As multiple witnesses testified, the defendant was one of the most powerful people in Ecuador. The defendant abused his position over a nearly decade-long period to obtain massive bribes and to launder those bribes into South Florida with the help of his son and others.

The history and characteristics of the defendant also militate for a significant sentence. The defendant attended law school in Ecuador in 1990 and then obtained a master's degree in constitutional law in 2009 in Ecuador. The defendant advised that he grew up with a "nice

2

childhood with no traumatic events" and that his "family did not suffer any financial struggles." This was not an immature or unsophisticated defendant. Nor did the defendant act out of desperation. Instead, Carlos Polit deliberately calculated and chose to engage in the criminal conduct in the indictment over a lengthy period. Given his level of sophistication, he knew the seriousness of his actions and the significant consequences associated with them. Nothing in his history and characteristics suggests he should not face such significant consequences.

> B. Need to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense

The Court should impose a significant sentence to reflect the seriousness of the offense. This case is distinct, and far more egregious, than the typical money laundering case involving foreign corruption. In most such cases, a government official receives a bribe or kickback for the award of a contract and launders that bribe into the United States. By contrast, the defendant abused the power of his position of trust and oversight to remove fines (as in the case of $100 million fine to Odebrecht) or to threaten to impose fines or recommend people for prosecution (as in the case of the Seguro Sucre contracts). The defendant sacrificed the Ecuadorian people's interests for his own illicit enrichment.

Moreover, after receiving the bribes, the defendant engaged in this complex scheme to launder funds into South Florida, primarily for the purchase of real estate. The defendant received at least $16.5 million in bribes and laundered at least $11 million into South Florida, primarily into real estate. Given the lengthy duration of the crime, the abuse of a position of public trust, and the substantial impact from his criminal activity, the Court should impose a significant sentence.

> C. Need for Adequate Deterrence

The Court should impose a significant sentence to deter other similarly situated foreign officials from using South Florida as a safe haven for corrupt proceeds. Cross-border money

laundering crimes, such as the defendant's crime, are uniquely difficult for the United States to investigate and bring to trial.

First, the government must prove the underlying bribery offense that occurred in the foreign country. This requires obtaining key documents from witnesses, typically outside of U.S. subpoena power, and figuring out ways to get them to travel into the country. The instant case is a prime example. The government facilitated bringing in six different witnesses from outside the United States to prove its case — three Brazilian and three Ecuadorian.

Second, the government must trace the illicit funds transferred into the United States that have often traveled through multiple jurisdictions. This case alone required requests for assistance to Ecuador, Panama, Portugal, and Curacao simply to track the source of the illicit funds. Such requests often take years to see results, if results are obtained at all. Such investigative challenges are particularly magnified in a case such as this in which the defendant took deliberate steps to avoid detection. For example, the defendant insisted on receiving bribes from Odebrecht in cash, thereby making the laundering more difficult to detect. The defendant also caused wire transfer bribes from Odebrecht to be sent to accounts in other people's names, further making the scheme more difficult to detect.

Finally, the defendant recruited Ecuadorian businessmen, including Diego Sanchez, to open accounts with his son John Polit to conceal and hide the scheme so that bribery funds would be interspersed and layered with actual investments, further obfuscating his criminal proceeds.

D.   Protect the Public from Further Crimes of the Defendant

The defendant engaged in this crime to create illicit generational wealth for his family, and he had great success. The result of the defendant's crime is that he obtained at least $16.5 million in bribes for him and his family, which was then laundered into South Florida. The bribery

4

spreadsheet maintained by the defendant's son indicates funds used to purchase residences in South Florida for three of the defendant's children.  See GX 8-9A.  The same bribery spreadsheet also shows over $40 million in investments in real estate, a tile business, a childcare business, loans, and restaurants.  Id.  A substantial sentence is necessary to deter others who may be planning similar crimes with the goal of obtaining illicit generational wealth for their family.

Given the defendant no longer has a government position, the government acknowledges it is unlikely that the defendant will again engage in the criminal activity in the indictment.  Nonetheless, it is relevant in the analysis that defendant has shown no remorse for his conduct nor provided any information concerning his financial assets.

E.  Kinds of Sentences Available

There can be no serious argument for any sentence other than a custodial one for the defendant, who abused his position of trust to obtain millions of dollars in bribes and laundered those funds in South Florida to create significant illicit generational wealth for himself and his family.  The crimes were as brazen as they were sophisticated and calculated, and a jury convicted the defendant for his knowing and deliberate criminal actions.

As set out in the PSI and in the government's response to the defendant's objections to the PSI, the Guidelines range for the defendant is 235 to 293 months' imprisonment.  To serve the legitimate purposes of sentencing, including promotion of respect for the law and general deterrence, the Court should sentence the defendant to a substantial term of imprisonment of 235 months.

F.  Any Pertinent Policy Statement Issues by the Sentencing Commission

There are no policy statements in the Sentencing Guidelines that justify a substantial variance for the defendant.  More specifically, the government considered the defendant's age in

recommending a sentence at the low end of the Guidelines range. The defendant's age does not warrant a below Guidelines sentence considering he was in his 60s when he committed the crimes of which he has been convicted. See United States v. Stuyvesant, 454 F.Supp.3d 1236, 1244 (S.D. Fla. 2020) ("The Court cannot agree that a defendant who is physically and mentally well enough to commit a serious federal crime is somehow not well enough to serve the sentence to which that crime inevitably exposes him."). See also United States v. Irey, 612 F.3d 1160, 1206 (11th Cir. 2010) (finding downward variance for age unreasonable, in part, because "rewarding [the defendant] for being older rewards him for evading detection and it is unreasonable to do that" and citing appellate court cases upholding twenty-year sentences, respectively, for a 73-year-old and 87-year-old defendant involved in significant crimes).

      G.      Need to Avoid Unwarranted Sentence Disparities Among Defendants with Similar Records Who Have Been Found Guilty of Similar Conduct

The purpose of the Sentencing Guidelines is to ensure "reasonable uniformity in sentencing by narrowing the wide disparity in sentences imposed for similar offenses committed by similar offenders." U.S.S.G. Ch. 1.3. A judge who "correctly calculate[s] and carefully review[s] the Guidelines range, [] necessarily g[i]ve[s] significant weight and consideration to the need to avoid unwarranted disparities." Gall v. United States, 552 U.S. 38, 54 (2007). "[C]onsideration of the advisory guidelines range is important, because the guidelines 'are an indispensable tool in helping courts achieve Congress's mandate to consider the need to avoid unwarranted sentence disparities among similarly situated defendants.'" Irey, 612 F.3d at 1217 (quoting United States v. Hunt, 459 F.3d 1180, 1184 (11th Cir. 2006)).

The Eleventh Circuit has cautioned against sentences that leave the impression that "would-be white-collar criminals stand to lose little more than a portion of their ill-gotten gains and practically none of their liberty." United States v. Martin, 455 F.3d 1227, 1240 (11th Cir.

6

2006). A Guidelines sentence will make clear to this defendant and to all other would-be white-collar criminals that the United States is not a safe haven for the spoils of their corruption.

The defendant's crimes offend basic notions of justice. His job was to root out and prevent corruption in a country where more than a quarter of its citizens lives in poverty.[1] Instead the defendant abused his position of trust and demanded and solicited more than $16 million in bribes, laundering that money in Miami to build illicit generational wealth for his family.

Though this particular defendant is unlikely to commit such a crime again, the Eleventh Circuit has underscored that "the Congress that adopted the § 3553 sentencing factors emphasized the critical deterrent value of imprisoning serious white collar criminals, even where those criminals might themselves be unlikely to commit another offense." Martin, 455 F.3d at 1240.

Nor would a Guidelines sentence create unwarranted sentencing disparities between defendants convicted of similar conduct. For example, the following defendants in this district received sentences within, or very close, their respective Guidelines ranges:

| Case Caption | Guidelines Range | Sentence | Trial or Plea |
| --- | --- | --- | --- |
| United States v. Diaz Guillen, 18-CR-80160 | 151 to 188 months | 180 months | Trial |
| United States v. Velasquez Figueroa, 18-CR-80160 | 151 to 188 months | 180 months | Trial |

Diaz was the Treasurer of Venezuela, and her husband Valesquez orchestrated the money laundering of her bribe payments. Judge Dimitrouleas found a loss amount of over $25 million and sentenced each to 180 months noting that a sentence toward the top of the Guidelines was

---

[1] See World Bank "Poverty & Equity Brief, Latin America & the Caribbean, April 2023" at https://databankfiles.worldbank.org/public/ddpext_download/poverty/987B9C90-CB9F-4D93-AE8C-750588BF00QA/current/Global_POVEQ_ECU.pdf

appropriate, in part, because the defendants' fraud "drastically changed their middle-class life to one of private jets, yachts, [and] world travel."

Other similarly situated defendants in this district have also received significant — though below Guidelines — sentences. For example, Esquenazi was the President of a company that bribed various Haitian government officials to obtain improper business advantages. By authorizing bribes to those officials, Esquenazi's company fraudulently reduced money it owed to the Haitian government by $2.2 million. Judge Martinez sentenced Esquenazi to 180 months, a below Guidelines sentence, in part due to his finding that a 180-month sentence was sufficient to deter future criminal conduct.

| Case Caption | Guidelines Range | Sentence | Trial or Plea |
| --- | --- | --- | --- |
| United States v. Joel Esquenazi, 09-CR-21010 | 292 to 365 months | 180 months | Trial |

A guideline sentence would also be consistent with the treatment of a similarly-situated defendant in Ecuador, Pablo Celi, former comptroller general of Ecuador following Carlos Polit from 2017 to 2020. The Ecuadorian government convicted Celi of organized crime for actions that included, like Polit, illegally removing fines issued by the comptroller's office in exchange for bribe payments. Celi received a sentence of 13 years and 4 months reflecting the seriousness of the conduct.[2]

Carlos Polit is more culpable than the defendants above in light of his unique position of public trust that he wantonly abused. A Guidelines sentence will not create sentencing disparity among similarly situated defendants.

---

[2] Carlos Polit received a sentence of 6 years in Ecuador for his conviction on extortion charges in Ecuador (Article 264 of Ecuador's Penal Code). According to Ecuadorian authorities, this sentence reflected the maximum punishment for that specific charge and the authorities were not able to supersede to bring more significant crime charges because Polit had fled Ecuador.

II.     **CONCLUSION**

For the reasons set forth above, the government respectfully recommend that the Court impose a Guidelines sentence of 235 months of imprisonment for CARLOS RAMON POLIT FAGGIONI.

DATED:  September 3, 2024                                              Respectfully submitted,

MARKENZY LAPOINTE                                  GLENN S. LEON
UNITED STATES ATTORNEY                      CHIEF, FRAUD SECTION
                                                                          CRIMINAL DIVISION
                                                                          U.S. DEPARTMENT OF JUSTICE

By:     s/ Michael N. Berger                              By:     s/ Jil Simon
         Michael N. Berger                                           Jil Simon
         Senior Litigation Counsel                              Trial Attorney
         Court ID No.                                                   Alexander Kramer
         99 N.E. 4th Street                                           Assistant Chief
         Miami, Florida 33132                                    1400 New York Avenue NW
         (305) 961-9445                                              Washington, DC 20005
         Email: Michael.berger2@usdoj.gov          (202) 514-3257
                                                                              Email: Jil.Simon@usdoj.gov

9

**CERTIFICATE OF SERVICE**

    I certify that on September 3, 2024, I electronically filed this document with the Clerk of the Court using CM/ECF, causing a copy to be served on counsel of record.

                                                   /s Jil Simon
                                                   Jil Simon
                                                   DOJ Trial Attorney